IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Matthew Smith,

Plaintiff

v.

Summit Entertainment LLC,

Defendant

Case No. 3:11CV348

ORDER

This is a suit by a professional singer, Matthew Smith (professionally known as Matt Heart), who placed a song which he had copyrighted in 2002 on various internet websites (YouTube, iTunes, CD Baby and Amazon). He posted his song on YouTube in November, 2010. He put it on other websites on December 7, 2010.

That day plaintiff received an email notice from YouTube that his song may have violated copyright laws. YouTube instructed plaintiff to delete any infringing materials.

Plaintiff, apparently learning that defendant Summit Enterprises had caused the YouTube notice, contacted a Summit attorney, Regan B. Pederson.

Pederson responded with an email stating that the issue was one of trademark, not copyright. Pederson also told plaintiff that the marketing—*i.e.*, the song's CD cover—violated Summit's copyright in the term "twilight."

This allegation was based on two aspects of the cover.

First, though plaintiff had copyrighted his song in 2002, well before Summit had produced a series of films denominated as the "Twilight Saga," his song's cover stated, "inspired by the twilight saga." In addition, the song's title ("eternal knight"), as it appeared on the cover had a typeface similar to that used for Summit's "twilight" mark.

Summit had also filed notices of infringement with the websites. According to the complaint, Summit's notice to the websites alleged plaintiff violated both trademark and copyright belonging to Summit.[1] On receiving the notices, the websites removed the plaintiff's song. This, the plaintiff contends, damaged his reputation and caused him to lose business opportunities. Among these was the opportunity to have his song played in movie theaters for twenty-eight weeks.

On December 8, 2010—the day after sending its first email to plaintiff—Summit informed him that he was entirely free to "redeposit" his song on YouTube, provided doing so was without reference to Summit's trademarked materials.

Later that day plaintiff notified Summit that he had removed the video from YouTube and would remove the "inspired by the twilight saga" from that site as well.

Plaintiff's complaint asserts seven causes of action:

1. Wrongful assertion that plaintiff's song infringed Summit's copyright in violation of 17 U.S.C. § 512;

2. Fraud/misrepresentation *via* Summit's assertion that it had a copyright interest in plaintiff's song;

---

[1] Materials extrinsic to the complaint indicate that Summit may have asserted copyright infringement only as to some of the websites, and only trademark infringement in its notices to one or more other websites. This a matter that the parties should be able to sort out readily during discovery.

3. Intentional infliction of emotional distress;

4. Intentional interference in contractual relationships;

5. Intentional interference with business relationships;

6. Copyright infringement;

7. Defamation

Pending is Summit's motion to dismiss. [Doc. 13]. For the reasons that follow, Summit's motion shall be granted in part and denied in part.

**Discussion**

In essence, Summit claims that plaintiff's complaint is long on conclusory assertions and so short on factual allegations that it must be dismissed under *Iqbal/Twombley*.

I agree with regard to plaintiff's claim in Count II of fraud. The complaint, even when read with the attachments and in plaintiff's favor, is too conclusory to withstand the motion to dismiss. The allegations of fraud fail to meet the heightened pleading requirements of Fed. R. Civ. P. 9(b).

This is particularly so with regard to plaintiff's assertion of detrimental reliance on any assertion by defendant of a copyright interest. Plaintiff knew that he, and he alone, had a valid copyright in his song, and he cannot plausibly contend that he relied to his detriment on receiving defendant's first notice. *See Evans v. Pearson Enterprises, Inc.*, 434 F.3d 839, 853 (6th Cir. 2006) ("Conclusory statements of reliance are not sufficient to explain with particularity how [the plaintiff] detrimentally relied on the alleged fraud").

To the extent that plaintiff may be alleging that defendant's statements to the websites were fraudulent, the motion is also meritorious with regard to such claim. Plaintiff does not have standing

to complain about any fraudulent misrepresentations which Summit may have made to various website service providers:

> The law is long settled that, in order to demonstrate actionable fraud, the defrauded party must demonstrate that the defrauding party knowingly (with scienter) made false statements upon which she or he expected the defrauded party to rely. Further, this false statement must have, in fact, been relied upon by the defrauded party and *injury to the relying party must have resulted* from the reliance. Burr v. Stark Cty. Bd. of Commrs. (1986), 23 Ohio St.3d 69, second paragraph of the syllabus; Cohen v. Lamko, Inc. (1984), 10 Ohio St.3d 167.

*Richards v. Paterek*, 1989 WL 146429, *3 (Ohio App.) (emphasis supplied).

Plaintiff has not alleged that the parties which he claims relied on Summit's false statements—the websites—were injured. Not himself having been the object of, or having relied on any false statements, he has no standing to assert a claim for fraud against Summit.

I also agree with defendant that plaintiff has failed to state a sufficient and plausible cause of action in his Count III for intentional infliction of emotional distress.

To prove such claim, plaintiff must prove:

> (1) the defendant intended to cause, or knew or should have known that his actions would result in serious emotional distress; (2) the defendant's conduct was so extreme and outrageous that it went beyond all possible bounds of decency and can be considered completely intolerable in a civilized community; (3) the defendant's actions proximately caused psychological injury to the plaintiff; and (4) the plaintiff suffered serious mental anguish of a nature no reasonable person could be expected to endure.

*Morrow v. Reminger & Reminger Co., L.P.A.*, 183 Ohio App.3d 40, 61 (2009) (citing *Ashcroft v. Mt. Sinai Med. Ctr.*,68 Ohio App.3d 359, 366 (1990)).

Count III contains no allegation that defendant intended to cause, or knew or should have known its false assertion of a copyright interest would cause serious emotional distress. Nor has

plaintiff alleged that he suffered "severe psychological injury." Even if those missing allegations were in the complaint, neither it nor its attachments provide a factual basis for such contentions.

I also agree with defendants with regard to plaintiff's claim in Count VI of copyright infringement. That count provides no details—it simply says, "Defendant has breached the copyright." [Doc. 1, ¶ 45]. Nowhere in the complaint is there any factual basis for making that assertion. This count fails to state a cause of action.

I disagree, however, with defendant that Count I, seeking damages under the Copyright Act, 17 U.S.C. §512(f), must be dismissed. Reading the admittedly sparse allegations in the body of the complaint in conjunction with the attached emails, I conclude that the plaintiff has stated a plausible claim, supported by sufficient factual allegations, to survive the motion to dismiss.

Pursuant to § 512(f), there exists "an expressly limited cause of action for improper infringement notifications" which, however, can impose "liability only if a copyright owner's notification is a 'knowing misrepresentation.'" *Dudnikov v. MGA Entm't, Inc*., 410 F. Supp. 2d 1010, 1017 (D. Colo. 2005) (quoting *Rossi v. Motion Picture Ass'n of Am.*, 391 F.3d 1000, 1004-05 (9th Cir. 2004)).

In this case, the plaintiff's complaint, read in plaintiff's favor, alleges that, at least with regard to some of the websites, defendant's "take down" notice stated that plaintiff was infringing the defendant's copyright.

While defendant *post hoc* and promptly acknowledged that it has no copyright interest in plaintiff's song, that does not matter. Plaintiff alleges that defendant made an unquestionably false assertion in take down notices and the song was taken down.

Plaintiff’s complaint contains a factual basis for finding that defendant knew when it sent such notice that it did not have a copyright interest in the song.

Defendant contends that it had no choice because some websites had only one notice form—for copyright violations. Whether that is so, and whether, if so, that provides a defense, is not now a proper consideration.

I likewise disagree with defendant’s demand that I dismiss Count V, which asserts a claim for intentional interference with contractual relationships.

The elements of tortious interference with a contract right are: “(1) a contractual relationship; (2) the tortfeasor's knowledge thereof; (3) an intentional interference causing a breach or termination of the relationship; and (4) damages resulting therefrom. *E.g.*, *Diamond Wine & Spirits, Inc. v. Dayton Heidelberg Distrib. Co., Inc*., 148 Ohio App. 3d 596, 605 (2002).

Read fairly and in plaintiff’s favor, the complaint and its attachments adequately allege that the defendant knew of plaintiff’s contractual relationship with the websites and intentionally interfered with those relationships, termination of the relationship and resulting damages.

The whole purpose of a take down notice is to cause removal of infringing material from a website. If the plaintiff can show that defendant knowingly falsely asserted such interest, he in all likelihood can also show that it knew that such false assertion, once made, would lead to removal of plaintiff’s song from the website. Given the contemporary importance to a creator of an artistic work of unimpeded website display, plaintiff’s claim of resulting damages is not implausible.

I reach the same conclusion for the same reasons with regard to plaintiff’s claim of tortious interference with business relationships in Count V.

The elements of such claim are:

> (1) a business relationship, (2) the tortfeasor's knowledge thereof, (3) an intentional interference causing a breach or termination of the relationship, and, (4) damages resulting therefrom. The main distinction between tortious interference with a contractual relationship and tortious interference with a business relationship is that interference with a business relationship includes intentional interference with prospective contractual relations, not yet reduced to a contract.

*Diamond Wine & Spirits, supra*, 148 Ohio App.3d at 604.

This count is, however, sufficient only *vis-a-vis* the alleged interference with plaintiff's business relations with the websites hosting his song. As to those relationships, this claim is duplicative of his claim for interference with contractual relationships.

This Count is insufficient, however, with regard to plaintiff's claim of loss of future contractual relationships as referenced in ¶¶ 12 and 13, because plaintiff has not alleged the defendant's awareness of those potential relationships.

Finally, I conclude that plaintiff has asserted an actionable claim for defamation in Count VII.

To prevail on a defamation claim, plaintiff must prove:

> (1) a false statement, (2) about the plaintiff, (3) was published without privilege to a third party, (4) with fault of at least negligence on the part of the defendant, and (5) the statement was either defamatory per se or caused special harm to the plaintiff.

*E.g.*, *McPeek v. Leetonia Italian–Am. Club*, 174 Ohio App. 3d 380, 384 (2007).

Fairly read, the complaint and its attachments assert: defendant knowingly made a false assertion that plaintiff had infringed its copyright to the song; it had no privilege to make such assertion, as plaintiff was the copyright holder; defendant acted with negligence if not willfully; and plaintiff was damaged.[2]

---

[2] Indeed, a false claim that an artistic work infringes another's copyright might be defamatory *per se*. *Kanjuka v. MetroHealth Med. Ctr.*, 151 Ohio App.3d 183, 783 N.E.2d 920,

Defendant also complains that plaintiff has not shown a basis for his claim of injury and damages. Rule 12(b) dismissal simply because the complaint does not particularize the plaintiff's losses is not, at least in this instance, appropriate.

**Conclusion**

Plaintiff's complaint adequately asserts claims under 17 U.S.C. § 512(f) (Count I) and for tortious interference with contractual relations (Count IV), tortious interference with business relations, as limited herein (Count V) and defamation (Count VII).

The defendant is entitled to dismissal as to plaintiff's claims for fraud (Count II), intentional infliction of emotional distress (Count III) and copyright infringement (Count VI).

It is, therefore,

ORDERED THAT:

1. Defendant's motion to dismiss (Doc. 13) be, and the same hereby is denied as to plaintiff's claims under 17 U.S.C. § 512(f) (Count I) and for tortious interference with contractual relations (Count IV), tortious interference with business relations, as limited herein (Count V) and defamation (Count VII);
2. Defendant's motion to dismiss be, and the same hereby is granted as to plaintiff's claims for fraud (Count II), intentional infliction of emotional distress (Count III) and copyright infringement (Count VI).

---

2002-Ohio-6803, at ¶ 16 (internal citations omitted) (emphasis supplied) ("[F]or a statement to be defamatory *per se*, it must 'consist of words which import an indictable criminal offense involving moral turpitude or infamous punishment, imputes some loathsome or contagious disease which excludes one from society or tends to *injure one in his trade or occupation*.' With defamation *per se*, damages and actual malice are presumed.") Whether a statement is defamation *per se* is a question of law to be decided by the court. *Bryans v. English Nanny and Governess School, Inc.*, 117 Ohio App. 3d 303, 316 (1996).

3. A status/scheduling conference is set for July 11, 2011 at 3:30 p.m.; out of town counsel may participate by telephone.

So ordered.

/s/James G. Carr
Sr. United States District Judge

.