\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

### IN THE UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF OHIO
### WESTERN DIVISION

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | | |
|---|---|---|
| Matthew Smith, pka Matt Heart, | : | Case No. 3:11CV00348 |
| Plaintiff, | : | Hon. James G. Carr |
| vs. | : | |
| Summit Entertainment, LLC, | : | **ANSWER AND COUNTERCLAIM OF SUMMIT ENTERTAINMENT, LLC WITH JURY DEMAND ENDORSED** |
| Defendant. | : | **HEREON** |
| | : | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## <u>ANSWER</u>

For its Answer in response to the allegations in the Complaint filed by Plaintiff Mathew Smith, pka Matt Heart ("Plaintiff"), as amended by the Court's Order of June 6, 2011, Defendant Summit Entertainment, LLC ("Summit") states as follows:

1.      Summit lacks sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 1 of the Complaint, and therefore denies the same.

2.      Summit lacks sufficient knowledge or information to form a belief as to the truth

of the allegations in paragraph 2 of the Complaint, and therefore denies the same.

3.     Summit admits that it is a theatrical motion picture development, financing, production and distribution studio.  Summit further admits that it handles aspects of marketing and distribution for its own internally developed motion pictures and other films.  Summit further admits that its principal place of business is in Santa Monica, California.  Summit denies the remaining allegations in paragraph 3 of the Complaint.

4.     Summit lacks sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 4 of the Complaint, and therefore denies the same.

5.     Summit admits that attached to the Complaint appears to be a copy of a CD cover with the words "Eternal Knight" written in Summit's distinctive and stylized font, a picture of the moon, and the words "inspired by the twilight saga."  Summit lacks sufficient knowledge or information to form a belief as to the truth of the remaining allegations in paragraph 5 of the Complaint, and therefore denies the same.

6.     Summit lacks sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 6 of the Complaint, and therefore denies the same.

7.     Summit lacks sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 7 of the Complaint, and therefore denies the same.

8.     Summit lacks sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 8 of the Complaint, and therefore denies the same.

9.     Summit admits that on or around December 7, 2010, Regan Pederson, an in-house attorney at Summit, sent Plaintiff an e-mail in which he stated that "the branding of [Plaintiff's] music includes the unauthorized use of the TWILIGHT mark, it constitutes intellectual property infringement and is prohibited."  Summit denies the remaining allegations in paragraph 9 of the Complaint.

10.     Summit denies the allegations in paragraph 10 of the Complaint.

11.     Summit denies the allegations in paragraph 11 of the Complaint.

12.     Summit lacks sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 12 of the Complaint, and therefore denies the same.

13.     Summit denies the allegations in paragraph 13 of the Complaint.

14.     Summit denies the allegations in paragraph 14 of the Complaint.

## Count I

## Violation of 17 U.S.C. § 512

15.     Summit incorporates by reference its responses to paragraphs 1-14.

16.     Summit admits that 17 U.S.C. § 512(f) states: "Any person who knowingly materially misrepresents under this section — (1) that material or activity is infringing, or (2) that material or activity was removed or disabled by mistake or misidentification, shall be liable for any damages, including costs and attorneys' fees, incurred by the alleged infringer, by any copyright owner or copyright owner's authorized licensee, or by a service provider, who is injured by such misrepresentation, as the result of the service provider relying upon such misrepresentation in removing or disabling access to the material or activity claimed to be infringing, or in replacing the removed material or ceasing to disable access to it."

17.     Summit admits that the film *Twilight* was released in the United States on November 21, 2008.  Summit lacks sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 17 of the Complaint, and therefore denies the same.

18.     Summit lacks sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 18 of the Complaint, and therefore denies the same.  Summit further states that Plaintiff knows that the infringing material was removed from certain websites based on trademark laws, not copyright laws.

19.     Summit denies the allegations in paragraph 19 of the Complaint.

20.     Summit denies the allegations in paragraph 20 of the Complaint, and Summit denies the WHEREFORE prayer following paragraph 20.

## Count II

## Fraud/Misrepresentation

[Dismissed pursuant to Court's June 6, 2011 Order (Docket No. 20)]

## Count III

## Intentional Infliction of Emotional Distress

[Dismissed pursuant to Court's June 6, 2011 Order (Docket No. 20)]

## Count IV

## Intentional Interferences In The Contractual Relationship

31.     Summit incorporates by reference its responses to paragraphs 1-30.

32.     Summit denies the allegations in paragraph 32 of the Complaint.

33.     Summit lacks sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 33 of the Complaint, and therefore denies the same.

34.     Summit denies the allegations in paragraph 34 of the Complaint.

35.     Summit denies the allegations in paragraph 35 of the Complaint.

36.     Summit denies the allegations in paragraph 36 of the Complaint, and denies the WHEREFORE prayer following paragraph 36.

## Count V

## Intentional Interference With Business Relationship

37.     Summit incorporates by reference its responses to paragraphs 1-36.

38.     Summit denies the allegations in paragraph 38 of the Complaint.

39.     Summit lacks sufficient knowledge or information to form a belief as to the truth

of the allegations in paragraph 39 of the Complaint, and therefore denies the same.

40.     Summit denies the allegations in paragraph 40 of the Complaint.

41.     Summit denies the allegations in paragraph 41 of the Complaint.

42.     Summit denies the allegations in paragraph 42 of the Complaint.

43.     Summit denies the allegations in paragraph 43 of the Complaint.

## Count VI

## Copyright

[Dismissed pursuant to Court's June 6, 2011 Order (Docket No. 20)]

## Count VII

## Defamation

48.     Summit incorporates by reference its responses to paragraphs 1-47.

49.     Summit denies the allegations in paragraph 49 of the Complaint.

50.     Summit denies the allegations in paragraph 50 of the Complaint.

51.     Summit denies the allegations in paragraph 51 of the Complaint.

52.     Summit denies the allegations in paragraph 52 of the Complaint.

53.     Summit denies the allegations in paragraph 53 of the Complaint.

54.     Summit denies the allegations in paragraph 54 of the Complaint.

55.     Summit denies the allegations in paragraph 55 of the Complaint, and denies the WHEREFORE prayer following paragraph 55.

## AFFIRMATIVE DEFENSES

## First Affirmative Defense

## (Failure to State a Claim)

1.     Plaintiff's Complaint fails to state a claim upon which relief can be granted.

**Second Affirmative Defense**

**(Laches)**

2.      Plaintiff's claims are barred by the doctrine of laches.

**Third Affirmative Defense**

**(Estoppel)**

3.      Plaintiff's claims are barred by the doctrine of estoppel, equitable estoppel, and/or

acquiescence.

**Fourth Affirmative Defense**

**(Waiver)**

4.      Plaintiff's claims are barred by the doctrine of waiver.

**Fifth Affirmative Defense**

**(Unclean Hands)**

5.      Plaintiff's claims are barred by the doctrine of Unclean Hands.

**Sixth Affirmative Defense**

**(Statute of Limitations)**

6.      Plaintiff's claims are barred by the applicable statute of limitations.

**Seventh Affirmative Defense**

**(Failure to Mitigate Damages)**

7.      Plaintiff's claims are barred by Plaintiff's failure to mitigate damages.

**Eighth Affirmative Defense**

**(Copyright Preemption)**

8.      Plaintiff's state law claims are preempted by the Copyright Act.

**Ninth Affirmative Defense**

**(Invalid Copyright(s))**

9.      Plaintiff's copyright(s) and alleged registration thereof is/are invalid and of no legal effect

**Tenth Affirmative Defense**

**(Other People's Conduct)**

10.      The losses, if any, sustained by Plaintiff were the result of conduct of other people or entities over whom Summit had no control or responsibility and for whose conduct Summit is not liable.

**Eleventh Affirmative Defense**

**(Good Faith)**

11.      Plaintiff's claims are barred because Summit acted, at all relevant times, in good faith in accordance with its rights under the law, including, but not necessarily limited to, its rights under 17 U.S.C. § 512.

**Twelfth Affirmative Defense**

**(Lack of Intent)**

12.      Plaintiff's claims are barred because Summit lacked the requisite intent to disrupt any alleged (and yet to be defined) relationship between Plaintiff and any third party.

**Thirteenth Affirmative Defense**

**(Justification)**

13.      Plaintiff's claims are barred because Summit was justified to the extent its conduct disrupted any alleged (and yet to be defined) relationship between Plaintiff and any third party.

## **Fourteenth Affirmative Defense**

### **(No Malice)**

14.     Plaintiff's claims are barred because Summit did not make the allegedly defamatory statements in the Complaint with hatred, malice or ill will toward Plaintiff.

## **Fifteenth Affirmative Defense**

### **(Opinion)**

15.     Plaintiff's claims are barred because the allegedly defamatory statements in the Complaint are not actionable because they consist entirely of opinions.

## **Sixteenth Affirmative Defense**

### **(Privilege)**

16.     Plaintiff's claims are barred because any and all communications made by Defendants and/or attributed to Defendants regarding Plaintiff that are the subject matter of Plaintiff's defamation claim were and are privileged, including, but not necessarily limited to, the privilege codified in California Civil Code section 47(c).

## **Seventeenth Affirmative Defense**

### **(Truth)**

17.     Plaintiff's claims are barred because the allegedly defamatory statements in the Complaint are or were true.

## **Eighteenth Affirmative Defense**

### **(Lack of Proximate Causation)**

18.     Plaintiff's claims are barred because Plaintiff cannot prove any facts showing that the conduct of Summit was the proximate cause of the injuries incurred, if any, and the damages sought in the Complaint, which are denied.

WHEREFORE, Summit prays that this Court enter judgment:

1.      Dismissing Plaintiff's Complaint in its entirety with prejudice;

2.      Awarding Summit its attorneys' fees and costs in this action; and

3.      For any other relief this Court may deem just and proper.

## COUNTERCLAIM

Summit, for its counterclaim against Plaintiff, and without waiving the defenses set forth in its Answer, hereby states as follows:

## JURISDICTION AND VENUE

1.      This action arises under the trademark and anti-dilution laws of the United States, 15 U.S.C. § 1125, et seq.  This Court has jurisdiction under 28 U.S.C. §§ 1331 and 1338(a) and (b), and § 1367, and 15 U.S.C. § 1121.  This action arises under the laws of the United States.

2.      Venue is proper in this district on Summit's counterclaim pursuant to 28 U.S.C. § 1391(b).

## PARTIES

3.      Summit is a Delaware limited liability company having its principal place of business in Santa Monica, California.

4.      On information and belief, Plaintiff is an individual who resides in Maumee, Lucase County, Ohio.  Plaintiff is subject to personal jurisdiction in this District.

## FACTS

**Summit's Business and Trademarks**

5.      Since 1991, Summit and its predecessors have been an active participant in the motion picture industry.  Summit has produced and distributed films and related entertainment products, and has also been involved in motion picture financing, production, and distribution services.

6.      Summit has also been involved in licensing trademarks associated with the motion pictures that it produces and distributes for merchandise sales.

7.      Summit is the producer and distributor of the highly successful Twilight motion picture franchise.  Initially, Summit released the extremely successful and popular Twilight about a teenage girl, Isabella ("Bella") Swan, who falls in love with a vampire, Edward Cullen.  Bella's other suitor in the film is Jacob Black, a werewolf.  The motion picture was filmed in the real-life town of Forks, Washington, a heavily-forested town about 130 miles west of Seattle.

8.      The first Twilight film was released in the United States on November 21, 2008.  Summit released a second motion picture in the Twilight series, *The Twilight Saga:  New Moon* ("*New Moon*"), in the United States on November 20, 2009.  Summit released *New Moon* for sale and rental on digital versatile disc ("DVD") on March 20, 2010.  Summit released a third motion picture in the Twilight series, *The Twilight Saga:  Eclipse ("Eclipse"*), in the United States on June 30, 2010.  Summit released Eclipse for sale and rental on DVD on December 4, 2010.  The motion pictures constituting *The Twilight Saga* series are herein referred to as the "Twilight Motion Pictures."  Like the first film, each of the remaining films in *The Twilight Saga* were filmed in the real-life, heavily-forested town of Forks, Washington.

9.      Each of the Twilight Motion Pictures were heavily promoted months before their release, and each promotional campaign's advertisement copy consistently featured specific color palettes and design motifs unique to and associated with its respective Twilight Motion Picture.

10.      Summit is the owner of the trademark TWILIGHT in block letters, and in a distinctive stylized font (the "TWILIGHT Stylized mark"), the trademark THE TWILIGHT SAGA, and other marks including the term TWILIGHT (collectively "the TWILIGHT Marks").  Summit owns federal registrations for TWILIGHT in Class 5 (Reg. No. 3,861,517), TWILIGHT in Class 9 (Reg. No. 3,884,386), TWILIGHT in Class 18 (Reg. No. 3,884,385), TWILIGHT in Class 25 (Reg. No. 3,944,718), TWILIGHT in Class 26 (Reg. No. 3,867,985), TWILIGHT in Classes 41 and 45 (Reg. No. 3,756,560), the TWILIGHT Stylized mark in Class 45 (Reg. No. 3,817,079), LUNA TWILIGHT in Class 3 (Reg. No. 3,929,237), and TWILIGHT TRACKER in

Class 9 (Reg. No. 3,793,131).  True and correct copies of these certificates of registration are attached hereto as **Exhibit A**.  Summit also owns many additional pending federal trademark applications to register the TWILIGHT Marks for use on various types of goods and services.  Summit's TWILIGHT Stylized mark is shown below:



11.     Summit owns rights to the mark TWILIGHT in block letters and in its distinctive stylized font for a number of entertainment-related goods and services, including for "musical recordings" and "digital music downloadable from the internet."  Summit has been using these marks in connection with "musical recordings" and "digital music downloadable from the internet" since at least as early as October 28, 2008 and continues to use its marks in connection with such goods.  Summit also owns a pending application before the U.S. Patent and Trademark Office for the TWILIGHT Stylized mark for such goods, Serial No. 77/852,622.

12.     Summit also owns common law rights to the mark THE TWILIGHT SAGA for "downloadable files in the field of entertainment, namely, ringtones, graphics, images, electronic games, and music, via a global computer network and wireless devices," "downloadable electronic publications in the nature of song books, tablature, and sheet music," and "musical sound recordings."  Summit has been using these marks in connection with  "musical recordings" and "digital music downloadable from the internet" since at least as early as October 15, 2009 and continues to use its marks in connection with such goods.  Summit also owns a pending application before the U.S. Patent and Trademark Office for the mark THE TWILIGHT SAGA for such goods, Serial No. 85/279,291.

**Plaintiff And His Infringing Actions**

13.     On information and belief, Plaintiff is a professional singer/entertainer.

14.　　On information and belief, Plaintiff wrote a song entitled Eternal Night aka Eternal Knight in 2002.

15.　　In or around December 2010, Summit learned that Plaintiff had developed a CD cover for the song Eternal Knight.  Even though Plaintiff wrote the song in 2002, his CD cover said that it was "inspired by the twilight saga" – i.e., the Twilight Motion Pictures.  This CD cover included the words "Eternal Knight" in a font that is very similar to the font used and registered by Summit for its TWILIGHT Stylized Mark.  It also depicted imagery associated with the Twilight Motion Pictures, including a full moon and a silhouette of a man and a woman in a forest.  This silhouette is reminiscent of the Bella and Edward characters in the Twilight Motion Pictures.  Indeed, the pompadour of the man in the silhouette matches Edward's pompadour from the films.  The forest setting also evokes Forks, Washington, which is where the Twilight Motion Pictures were filmed.  A comparison of Summit' TWILIGHT Stylized Mark and Plaintiff's original CD cover is set forth below:

|  **Summit's Stylized Mark**  |  **Plaintiff's Infringing Use**  |
| :---: | :---: |
|  |  |

A true and correct copy of Plaintiff's original CD cover is attached hereto as **Exhibit B**.

16.　　On information and belief, Plaintiff developed his CD cover for the song *Eternal Knight* sometime after the release date of the first *Twilight* motion picture – i.e., after

November 21, 2008.  Plaintiff's purpose for his CD cover was to intentionally trade on the valuable goodwill of Summit and the Twilight Motion Pictures.

17.     In or around December 2010, Summit learned that Plaintiff was using his original CD cover on the Internet in connection with "musical recordings" and "digital music downloadable from the internet."  Such uses included on websites like YouTube and others.

18.     On December 7, 2010, Regan Pederson, an in-house attorney at Summit, sent Plaintiff an e-mail informing him that his CD cover violated Summit's trademark rights. Mr. Pederson stated that "the branding of [Plaintiff's] music includes the unauthorized use of the TWILIGHT mark, it constitutes intellectual property infringement and is prohibited."

19.     One day later, or December 8, 2010, Mr. Pederson sent Plaintiff a second e-mail in which he further informed Plaintiff that his CD cover violated Summit's trademark rights and constituted a false designation of origin.  Mr. Pederson stated that Plaintiff's "activity constitute[d] trademark infringement, dilution, false designation of origin, and false association among other actionable offenses."

20.     Later that same day, on December 8, 2010, Plaintiff conceded that he had been infringing Summit's TWILIGHT marks and falsely associating himself with Summit.  In an e-mail to Mr. Pederson dated December 8, 2010, Plaintiff stated:  "I have since removed the video from youtube i will also remove the (Inspired by The Twilight saga) from the content."

21.     In a further concession that he had been infringing Summit's valuable and enforceable intellectual property rights, Plaintiff subsequently altered his CD cover to remove the words "inspired by the twilight saga" in Summit's distinctive font.  Lest there be any doubt that Plaintiff still intended to trade on Summit's good will, however, Plaintiff's CD cover now includes the words "A Vampire Love Story" along with the same *Twilight*-related imagery as before, thereby still calling to mind the Twilight Motion Pictures.  Below is a copy of Plaintiff's current CD cover:



A true and correct copy of Plaintiff's current CD cover is attached hereto as **Exhibit C**.

22.     As with his original CD cover, and despite being put on express notice of Summit's valuable and enforceable intellectual property rights, Plaintiff's current CD cover was designed with the express purpose of trading on Summit's valuable goodwill.

**COUNT ONE**

**(False Designation of Origin – 15 U.S.C. § 1125(a))**

23.     Summit repeats and realleges each and every allegation of paragraphs 1 through 22, above, as though fully set forth herein.

24.     Plaintiff's actions as alleged herein constitute a false designation of origin in violation of 15 U.S.C. § 1125(a).

25.     Plaintiff's use of the words "Eternal Knight", "inspired by the twilight saga" and "A Vampire Love Story," all in Summit's distinctive font; Plaintiff's use of imagery related to the Twilight Motion Pictures, including a full moon and a silhouette of characters from the film in a forest setting; and Plaintiff's use of Summit's TWILIGHT Marks constitutes a false designation of origin and a false description or representation that wrongfully and falsely designates Plaintiff's CD covers as originating from Summit, or being associated with, licensed by, or authorized by Summit.

26.     As a direct and proximate result of Plaintiff's wrongful acts, Summit has suffered and continues to suffer and/or is likely to suffer damage to its trademarks, business reputation, and goodwill.  Plaintiff will continue to use, unless restrained, such words and imagery and will cause irreparable damage to Summit.  Summit has no adequate remedy at law and is entitled to an injunction restraining Plaintiff, and all persons acting in concert with him and/or on his behalf, from engaging in further acts of false designation of origin.

27.     Summit is further entitled to recover from Plaintiff the actual damages that it sustained and/or is likely to sustain as a result of Plaintiff's wrongful acts.  Summit is presently unable to ascertain the full extent of the monetary damages that it has suffered and/or is likely to sustain by reason of Plaintiff's acts of false designation of origin.

28.     Summit is further entitled to recover from Plaintiff the gains, profits, and advantages that Plaintiff has obtained as a result of his wrongful acts.  Summit is presently unable to ascertain the extent of the gains, profits, and advantages that Plaintiff has realized by reason of his acts of false designation of origin.

29.     Because of the willful nature of Plaintiff's wrongful acts, Summit is entitled to an award of treble damages and increased profits pursuant to 15 U.S.C. § 1117 and destruction of Plaintiff's CD covers under 15 U.S.C. § 1118.

30.     Summit is also entitled to recover its attorneys' fees and costs of suit pursuant to 15 U.S.C. § 1117.

## COUNT TWO

### (Trademark Infringement – 15 U.S.C. § 1114 and Common Law)

31.     Summit repeats and realleges each and every allegation of paragraphs 1 through 30, above, as though fully set forth herein.

32.     Plaintiff has used in commerce, without Summit's permission, Summit's TWILIGHT Marks in a manner that is likely to cause confusion with respect to the source and origin of Plaintiff's CD covers and is likely to cause confusion or mistake and to deceive

purchasers as to the affiliation, connection, or association of Summit with Plaintiff and/or his products.

33.     Plaintiff's acts constitute infringement of Summit's TWILIGHT Marks in violation of the common law and under 15 U.S.C. § 1114.

34.     As a direct and proximate result of Plaintiff's wrongful acts, Summit has suffered and continues to suffer and/or is likely to suffer damage to its trademarks, business reputation, and goodwill.  Plaintiff will continue to use, unless restrained, such words and imagery and will cause irreparable damage to Summit.  Summit has no adequate remedy at law and is entitled to an injunction restraining Plaintiff, and all persons acting in concert with him and/or on his behalf, from engaging in further acts of false designation of origin.

35.     Summit is further entitled to recover from Plaintiff the actual damages that it sustained and/or is likely to sustain as a result of Plaintiff's wrongful acts.

36.     Summit is further entitled to recover from Plaintiff the gains, profits, and advantages that Plaintiff has obtained as a result of his wrongful acts.

37.     Because of the willful nature of Plaintiff's actions, Summit is entitled to all remedies available under 15 U.S.C. §§ 1117 and 1118 and the common law.

## COUNT THREE

### (Dilution – 15 U.S.C. § 1125(c) and Common Law)

38.     Summit repeats and realleges each and every allegation of paragraphs 1 through 37, above, as though fully set forth herein.

39.     Summit has used its TWILIGHT Marks to identify its products relating to the Twilight Motion Pictures before Plaintiff began promoting and selling his CD covers or otherwise used the TWILIGHT Marks.  The TWILIGHT Marks are inherently distinctive and have acquired distinction through Summit's extensive, continuous, and exclusive use of the TWILIGHT Marks.

40.     The TWILIGHT Marks are famous and distinctive within the meaning of 15 U.S.C. §§ 1125(c)(1) and 1127 and the common law.

41.     Plaintiff's use of the TWILIGHT Marks are likely to dilute the distinctive quality of Summit's marks in violation of  15 U.S.C. § 1125(c) and the common law.

42.     Plaintiff's acts complained of herein are likely to damage Summit irreparably. Summit has no adequate remedy at law for such wrongs and injuries.  The damage to Summit includes harm to its trademarks, goodwill, and reputation that money cannot compensate. Summit is, therefore, entitled to a preliminary and permanent injunction enjoining Plaintiff's use of the TWILIGHT Marks in connection with the promotion, advertisement and sale of any goods by Plaintiff.

43.     Summit is further entitled to recover from Plaintiff its actual damages sustained by Summit as a result of Plaintiff's wrongful acts.  Summit is presently unable to ascertain the full extent of the monetary damages it has suffered by reason of Plaintiff's acts of dilution.

44.     Summit is further entitled to recover from Plaintiff the gains, profits, and advantages Plaintiff has obtained as a result of his wrongful acts.  Summit is presently unable to ascertain the extent of the gains, profits and advantages Plaintiff has realized by reason of Plaintiff's willful acts of dilution.

45.     Because of the willful nature of Plaintiff's actions, Summit is entitled to all remedies available under 15 U.S.C. §§ 1117 and 1118, and the common law.

## COUNT FOUR

### (Ohio Deceptive Trade Practices Act, RC § 4165.01 et seq.)

46.     Summit repeats and realleges each and every allegation of paragraphs 1 through 45, above, as though fully set forth herein.

47.     Plaintiff's use of the words "Eternal Knight", "inspired by the Twilight Saga" and "A Vampire Love Story," all in Summit's distinctive font; Plaintiff's use of imagery related to the Twilight Motion Pictures, including a full moon and a silhouette of characters from the film in a forest setting; and Plaintiff's use of Summit's TWILIGHT Marks constitutes a false designation of origin and a false description or representation that wrongfully and falsely

designates Plaintiff's CD covers as originating from Summit, or being associated with, licensed by, or authorized by Summit.

48.     Plaintiff has used, without Summit's permission, Summit's TWILIGHT Marks in a manner that is likely to cause confusion with respect to the source and origin of Plaintiff's CD covers and is likely to cause confusion or mistake and to deceive purchasers as to the affiliation, connection, or association of Summit with Plaintiff and/or his products.

49.     Plaintiff's acts constitute infringement of Summit's TWILIGHT Marks in violation of the Ohio Deceptive Trade Practices Act.

50.     As a direct and proximate result of Plaintiff's wrongful acts, Summit has suffered and continues to suffer and/or is likely to suffer damage to its trademarks, business reputation, and goodwill.  Plaintiff will continue to use, unless restrained, such words and imagery and will cause irreparable damage to Summit.  Summit has no adequate remedy at law and is entitled to an injunction restraining Plaintiff, and all persons acting in concert with him and/or on his behalf, from engaging in further acts of false designation of origin.

51.     Summit is further entitled to recover from Plaintiff the actual damages that it sustained and/or is likely to sustain as a result of Plaintiff's wrongful acts.

52.     Because of the willful nature of Plaintiff's actions, Summit is entitled to an award of its attorneys' fees.

### COUNT FIVE

### (Common Law Unfair Competition)

53.     Summit repeats and realleges each and every allegation of paragraphs 1 through 52, above, as though fully set forth herein.

54.     Plaintiff's use of the words "Eternal Knight", "inspired by the twilight saga" and "A Vampire Love Story," all in Summit's distinctive font; Plaintiff's use of imagery related to the Twilight Motion Pictures, including a full moon and a silhouette of characters from the film in a forest setting; and Plaintiff's use of Summit's TWILIGHT Marks constitutes a false designation of origin and a false description or representation that wrongfully and falsely

designates Plaintiff's CD covers as originating from Summit, or being associated with, licensed by, or authorized by Summit.

55.     Plaintiff has used, without Summit's permission, Summit's TWILIGHT Marks in a manner that is likely to cause confusion with respect to the source and origin of Plaintiff's CD covers and is likely to cause confusion or mistake and to deceive purchasers as to the affiliation, connection, or association of Summit with Plaintiff and/or his products.

56.     Plaintiff's acts constitute infringement of Summit's TWILIGHT Marks in violation of the common law.

57.     As a direct and proximate result of Plaintiff's wrongful acts, Summit has suffered and continues to suffer and/or is likely to suffer damage to its trademarks, business reputation, and goodwill.  Plaintiff will continue to use, unless restrained, such words and imagery and will cause irreparable damage to Summit.  Summit has no adequate remedy at law and is entitled to an injunction restraining Plaintiff, and all persons acting in concert with him and/or on his behalf, from engaging in further acts of false designation of origin.

58.     Summit is further entitled to recover from Plaintiff the actual damages that it sustained and/or is likely to sustain as a result of Plaintiff's wrongful acts.

59.     Because of the willful nature of Plaintiff's actions, Summit is entitled to an award of its attorneys' fees.

WHEREFORE, Summit prays that this Court enter judgment against Plaintiffs as follows:

1.     Finding that Plaintiff has violated 15 U.S.C. § 1125(a) and the common law, has infringed Summit's TWILIGHT Marks under 15 U.S.C. § 1114 and the common law, has violated 15 U.S.C. § 1125(c)(1) and the common law, has violated Ohio Deceptive Trade Practices Act, RC § 4165.01 *et seq*., and has engaged in common law unfair competition.

2.     Ordering that Plaintiff and his subsidiaries, officers, agents, servants, directors, employees, servants, partners, representative, assigns, successors, related

companies, and attorneys and all persons in active concert or participation with Plaintiff or with any of the foregoing be enjoined preliminarily during the pendency of this action and permanently thereafter from:

a.      Manufacturing, transporting, promoting, importing, advertising, publicizing, distributing, offering for sale, or selling any goods bearing the TWILIGHT Marks or any other mark, name, symbol, or logo which is likely to cause confusion or to cause mistake or to deceive persons into the erroneous belief that any goods that Plaintiff caused to enter the stream of commerce are sponsored, licensed, or endorsed by Summit, are authorized by Summit, or are connected or affiliated in some way with Summit or the Twilight Motion Pictures including without limitation, the ETERNAL KNIGHT mark in Summit's Twilight Stylized font;

b.      Manufacturing, transporting, promoting, importing, advertising, publicizing, distributing, offering for sale, or selling any goods bearing the TWILIGHT Marks or any other mark, name, symbol, or logo that is a copy or colorable imitation of, incorporates, or is confusingly similar to the TWILIGHT Marks;

c.      Falsely implying Summit's endorsement of Plaintiff's goods or engaging in any act or series of acts which, either alone or in combination, constitutes unfair methods of competition with Summit and from otherwise interfering with, or injuring the TWILIGHT Marks or the goodwill associated therewith;

d.      Engaging in any act which is likely to dilute the distinctive quality of the TWILIGHT Marks, the Twilight Stylized Mark, and/or injures Summit's business reputation;

e.      Representing or implying that Plaintiff is in any way sponsored by, affiliated with, or endorsed or licensed by Summit; or

f.      Knowingly assisting, inducing, aiding, or abetting any other person or
business entity in engaging in or performing any of the activities referred
to in paragraphs 2(a) to (e) above.

3.      Ordering that Summit is the exclusive owner of the TWILIGHT Marks
and that such marks are valid;

4.      Ordering that Plaintiff be required to deliver to Summit for destruction all
CD covers referenced herein, as well as any other CD covers which bear
the TWILIGHT Marks or any other trademarks, names, logo, trade dress,
or packaging that are confusingly or substantially similar to the
TWILIGHT Marks;

5.      Granting an award of damages suffered by Summit according to proof at
the time of trial;

6.      Ordering that Plaintiff account to Summit for any and all profits earned as
a result of his acts of infringement in violation of Summit's rights under
the Lanham Act;

7.      Granting an award of three times the amount of compensatory damages
and increased profits pursuant to 15 U.S.C. § 1117;

8.      Granting an award of punitive damages for the willful and wanton nature
of Plaintiff's aforesaid acts;

9.      For pre-judgment interest on any recovery by Summit;

10.     Granting an award of Summit's costs, expenses, and reasonable attorney's
fees; and

11.     Granting such other and further relief as is just and proper.

## DEMAND FOR JURY TRIAL

Summit hereby demands a trial by jury on all issues and claims so triable.

Respectfully submitted,

By   /s/ Janine T. Avila
    William M. Connelly (0031154)
    E-Mail:  wconnelly@cjc-law.com
    Janine T. Avila (0055853)
    E-Mail:  javila@cjc-law.com
    Adam S. Nightingale (0079095)
    E-Mail:  anightingale@cjc-law.com
    CONNELLY, JACKSON & COLLIER LLP
    405 Madison Avenue, Suite 1600
    Toledo, Ohio 43604
    Telephone:  (419) 243-2100
    Facsimile:  (419) 243-7119

    and

    MANATT, PHELPS & PHILLIPS, LLP
    Jill M. Pietrini, (138335)
    Email:  jpietrini@manatt.com
    11355 West Olympic Boulevard
    Los Angeles, CA  90064-1614
    Telephone:  (310) 312-4325
    Facsimile:  (310) 312-4224

    *Counsel for Defendant*
    *Summit Entertainment, LLC*

## PROOF OF SERVICE

This is to certify that a copy of the foregoing has been filed electronically this 20th day of June, 2011.  Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.

By   /s/ Janine T. Avila
       *Counsel for Defendant*
       *Summit Entertainment, LLC*

300268488.2